UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAMBRIDGE VALLEY MACHINING, INC.<br><br>Plaintiff,<br><br>-against-<br><br>HUDSON MFG LLC,<br><br>Defendant. | Civil Action No.   1:18-cv-1022 (DNH/CFH)<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Cambridge Valley Machining, Inc. ("Plaintiff" or "CVMI"), by its undersigned attorneys, for its complaint against Hudson MFG LLC ("Defendant" or "Hudson"), hereby alleges upon information and belief the following:

**THE PARTIES**

1.   Plaintiff is a corporation incorporated under the laws of New York, with a principal place of business at 28 Perry Lane, Cambridge, NY 12816.

2.   Plaintiff is in the business of machining materials and parts for incorporation into products ranging from medical equipment to firearms to aeronautics.

3.   Defendant is a limited liability corporation ("LLC") incorporated under the laws of Texas, with a principal place of business at 10986 NW HK Dodgen Loop, Temple, Texas, 76504-2607. Each member of the LLC is a citizen of Texas.

4.   Defendant is in the business of manufacturing firearms.

1

**JURISDICTION AND VENUE**

5. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, without interest and costs, and the parties are citizens of different states: Plaintiff is a citizen of New York and Defendant and its members are citizens of Texas.

6. Personal jurisdiction and venue are predicated on 28 U.S.C. § 1391(b) and New York Civil Practice Law and Rules § 302 since a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of New York, a substantial part of property that is subject to this action is situated in the Northern District of New York, and Defendant transacts business within the State of New York.

**FACTUAL ALLEGATIONS**

7. CVMI is a machining company founded in 1988 that provides sophisticated, comprehensive design through manufacturing services for startups, Fortune 500 businesses, and other domestic and global customers.

8. CVMI has machined materials for clients in the aerospace, medical, defense, automotive, and firearms industries, among many others.

9. The machining process requires that a client provide CVMI with specifications for the product that the client requires. The client will usually incorporate the product into a larger, finished product that the client manufactures.

10. If CVMI and the client agree on terms, CVMI will configure its machining operation in order to manufacture the goods to the client's specifications, a process known as "tooling."

11. By virtue of this tooling process, the goods manufactured to a client's specifications can only be sold to that client to be included in that client's finished product.

12. On September 21, 2016, Hudson sent CVMI a request for quotations for production of a grip and a slide that would be manufactured to Hudson's specifications to be included in Hudson's H9 pistol.

13. On October 18, 2016, CVMI sent Hudson an offer (the "Offer") to manufacture the components to Hudson's specifications at a range of prices, depending on the volume ordered. A copy of the Offer is attached hereto as Exhibit A.

14. The Offer also identified various up-front tooling costs that CVMI would incur and that Hudson must pay in order for Hudson to reconfigure its equipment so that it could machine the parts to Hudson's specifications.

15. The Offer stated that CVMI's "Terms & Conditions (D106) Apply" and provided a web address where those conditions could be found. A copy of the D106 Terms and Conditions is attached hereto as Exhibit B.

16. CVMI's Terms & Conditions (D106) (the "Terms and Conditions") state, in part, that "All prices are based on payment within 30 days of date of invoice and a 1.5% service and handling charge per month shall be applied on all invoices not paid within the agreed 30 day period."

17. The Terms and Conditions also state that "Should Cambridge Valley Machining, Inc. be awarded an order from this quotation" its Terms and Conditions "shall be an irrevocable part of said order."

18. The Terms and Condition also state that "This quotation is an offer by CVMI and becomes a binding contract on the terms set forth herein when accepted in writing or upon shipment of customer furnished material for the work described herein."

19. The Terms and Conditions also state that "Should CVMI be issued a purchase order for the services or goods described on the attached quotation, and should any such purchase order include terms and conditions that are inconsistent with or in addition to the terms hereof, any such inconsistent terms or conditions are not applicable unless expressly consented to in writing by an authorized CVMI management representative, even if CVMI commences performance."

20. On November 4, 2016, Hudson accepted CVMI's offer by submitting a Purchase Order for $1,687,500 in items, including $1,200,000 for 10,000 grips, $330,000 for 10,000 barrels, and $157,500 for 10,000 strikers.  A copy of Hudson's Purchase Order is attached hereto as Exhibit C.

21. On December 6, 7, and 13, 2016, CVMI responded with Sales Order Acknowledgements for the grips, barrels, and strikers, respectively, stating that the requested parts would be "released in 2,500 monthly quantities starting 2/1/2016."  A copy of CVMI's Sales Order Acknowledgements are attached hereto as Exhibit D.

22. The Sales Order Acknowledgments each reiterated that CVMI's "Terms & Conditions Apply" to the contract.

23. After December 6, 2016, CVMI began machining parts to Hudson's specifications and shipping those parts per Hudson's instructions.

24. With each order shipped, CVMI issued an Invoice that stated the number of parts shipped and the balance due for those parts.  A copy of one such invoice is attached hereto as Exhibit E.

25. Over the ensuing months, CVMI made periodic shipments to Hudson, and included an invoice with each shipment.

26. Hudson also periodically made additional purchase orders that sought additional parts with different specifications. These orders were placed under the terms of the parties' original contract.

27. CVMI responded to these additional purchase orders with a Sales Order Acknowledgement. These Sales Order Acknowledgements continued to reiterate that CVMI's Terms and Conditions applied to the contract.

28. From the date of Hudson's acceptance of CVMI's Offer on November 4, 2016, CVMI machined and shipped parts to Hudson at Hudson's request.

29. Hudson accepted and retained these parts without objection, but failed to pay for parts worth a total of at least $384,730.99. Hudson continues to refuse to pay for such parts.

30. In addition, CVMI has ordered and paid for materials and machined parts at Hudson's request and to Hudson's specifications that CVMI has been unable to ship to Hudson because Hudson has refused to agree to pay for such parts. The value of these parts and materials is at least $184,070.00.

**FIRST CAUSE OF ACTION**
**(Breach of Contract)**

31. Plaintiff repeats and incorporates the statements of paragraphs 1 through 30 as if fully set forth herein.

32. CVMI and Hudson entered into a contract on November 4, 2016 when Hudson accepted CVMI's Offer.

33. That contract required CVMI to machine parts per Hudson's specifications and ship them to Hudson per Hudson's instructions. CVMI has at all times complied with the contract.

34. Hudson's actions described *supra* have breached the contract.

35. CVMI has been damaged by Hudson's breach of contract in the amount of at least $568,800.99, and is entitled to interest at a rate of 1.5% on said amount.

## SECOND CAUSE OF ACTION
### (Damages for Price Under the Uniform Commercial Code)

36. Plaintiff repeats and incorporates the statements of paragraphs 1 through 35 as if fully set forth herein.

37. As a contract for the sale of goods as defined in Article 2 of the New York Commercial Code (the "U.C.C."), the agreement between the parties is governed by the provisions of the New York U.C.C., codified at N.Y. U.C.C. §§ 1-100 *et seq.*

38. Pursuant to U.C.C. § 2-606 and § 2-607, Plaintiff may recover the price of the goods that were accepted by Defendant together with incidental damages under U.C.C. § 2-710.

39. Defendant received, accepted, and retained the goods that Plaintiff shipped to it and failed to pay for these goods.

40. As a result of Defendant's acceptance of goods and failure to pay the prices for them as they became due, Plaintiff has incurred damages in the amount of at least $384,730.99, plus a penalty on said amount of 1.5% per month, plus incidental damages, collection costs, and attorneys' fees.

## THIRD CAUSE OF ACTION
### (Damages for Defendant's Non-Acceptance of Conforming Goods Under the Uniform Commercial Code)

41. Plaintiff repeats and incorporates the statements of paragraphs 1 through 40 as if fully set forth herein.

42. As a contract for the sale of goods as defined in Article 2 of the New York Commercial Code (the "U.C.C."), the agreement between the parties is governed by the provisions of the New York U.C.C., codified at N.Y. U.C.C. §§ 1-100 *et seq.*

43. Pursuant to U.C.C. § 2-703 and § 2-709, Plaintiff may recover the price of the conforming goods that were not accepted by Defendant.

44. The conforming goods are goods that Plaintiff has machined at Defendant's request and to Defendant's specifications.

45. Because the conforming goods were made to Defendant's specifications, resale of these goods is impracticable.

46. As a result of Defendant's non-acceptance of the conforming goods, Plaintiff has incurred damages in the amount of at least $184,070.00 plus a penalty on said amount of 1.5% per month, incidental damages, collection costs, and attorneys' fees.

47. In the alternative, pursuant to U.C.C. § 2-703 and § 2-708, Plaintiff may recover the difference between the market price at the time and place of tender and the unpaid contract price of the wrongfully rejected conforming goods, plus interest and incidental damages, as a result of Defendant's non-acceptance of the conforming goods.

**FOURTH CAUSE OF ACTION**
**(Unjust Enrichment)**

48. Plaintiff repeats and incorporates the statements of paragraphs 1 through 47 as if fully set forth herein.

49. Defendant has taken and continues to hold and use Plaintiff's goods and products without paying for such property.

50. Defendant has been unjustly enriched at Plaintiff's expense by such retention.

51. By reason of the foregoing, Plaintiff has been damaged in an amount to be determined at trial, in the amount of at least $384,730.99, plus interest, late fees, collection costs, and attorneys' fees.

**WHEREFORE**, Plaintiff Cambridge Valley Manufacturing, Inc. demands judgment against Defendant Hudson MFG., LLC on each and every cause of action awarding compensatory damages in an amount to be proven at trial in the amount of at least $568,800.99, plus late payment fees, interest, and incidental damages, and granting such other and further relief as the Court deems just and proper, together with the costs and disbursements of this action, including reasonable attorneys' fees.

Dated:   August 24, 2018

                                  **BOIES SCHILLER FLEXNER LLP**

By:   */s/ Adam R. Shaw*
       Adam R. Shaw (Bar No. 502142)
       John F. Dew (Bar No. 603035)
       30 S. Pearl St., 11th Floor
       Albany, NY 12207
       Telephone: (518) 434-0600
       Facsimile: (518) 434-0665
       E-mail:  ashaw@bsfllp.com
               jdew@bsfllp.com

       *Attorneys for Plaintiff Cambridge Valley Machining, Inc.*

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Cambridge Valley Machining, Inc. hereby requests a trial by jury on all issues triable to a jury.

By: */s/ Adam R. Shaw*
Adam R. Shaw
John F. Dew
30 S. Pearl St., 11th Floor
Albany, NY 12207
Telephone: (518) 434-0600
Facsimile: (518) 434-0665
E-mail: ashaw@bsfllp.com
jdew@bsfllp.com

*Attorneys for Plaintiff Cambridge Valley Machining, Inc.*