UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAMBRIDGE VALLEY MACHINING, INC.<br><br>Plaintiff,<br><br>-v-<br><br>HUDSON MFG LLC, BILLIE HUDSON III, and LAUREN HUDSON,<br><br>Defendants. | **ANSWER TO AMENDED COMPLAINT WITH COUNTERCLAIM**<br><br>**JURY TRIAL DEMANDED**<br><br>Civ. Action No. 1:18-cv-1022 (DNH/CFH) |

Defendants, HUDSON LLC ("Hudson"), BILLIE HUDSON III, and LAUREN HUDSON (collectively "Defendants"), by and through their attorneys, Smith, Sovik, Kendrick and Sugnet, P.C., answer Plaintiff's Amended Complaint, as follows:

### THE PARTIES

1.  **ADMIT** the allegations contained in paragraphs "1" "2" "3" and "4" of Plaintiff's Amended Complaint, and **DENY** the allegations contained in paragraphs "5" and "6" of Plaintiff's Amended Complaint to the extent that they state an incorrect address for Defendants Billie Hudson III, and Lauren Hudson.

### JURISDICTION AND VENUE

2.  **ADMIT** the allegations contained in paragraph "7" of Plaintiff's Amended Complaint.

3.  **DENY** the allegations contained in paragraph "8" of Plaintiff's Amended Complaint.

1

## FACTUAL ALLEGATIONS

4.    **DENY KNOWLEDGE OR INFORMATION** sufficient to form a belief as to the allegations contained in paragraphs "9" through "13" of Plaintiff's Amended Complaint.

5.    **ADMIT** the allegations contained in paragraph "14" of Plaintiff's Amended Complaint.

6.    **ADMIT** the allegations contained in paragraph "15" of Plaintiff's Amended Complaint to the extent that Plaintiff sent Hudson an Offer to manufacture a grip and slide on October 18, 2016, quoted at quantities of between 500 and 2,500.

7.    **ADMIT** the allegations contained in paragraph "16" of Plaintiff's Amended Complaint to the extent the Offer referenced tooling costs for supplying quantities of 2,500 units per month, but **DENY** to the extent Plaintiff met this quantity of production or that such tooling costs were thus incurred.

8.    **ADMIT** the allegations contained in paragraph "17" of Plaintiff's Amended Complaint to the extent that the phrase "Terms & Conditions (D106) Apply" is printed on the Offer, and **ADMIT** the Offer provided a web address purporting to set forth Plaintiff's terms and conditions, but **DENY** that the web address was valid, accessible or functional, **DENY** that reference to this invalid, non-functional web address provided Hudson with notice of Plaintiff's terms and conditions and **DENY KNOWLEDGE OR INFORMATION** sufficient to form a belief as to the validity or accuracy of Exhibit B attached to the Amended Complaint.

9.    **ADMIT** that Plaintiff has attached a document to the Amended Complaint as "Exhibit B" entitled "Cambridge Valley Machining, Inc. (CVMI) Terms and Conditions, the contents of which speaks for itself; otherwise DENY the allegations contained in paragraphs "18" through "21" of Plaintiff's Amended Complaint.

10. **ADMIT** the allegations contained in paragraph "22" of Plaintiff's Amended Complaint to the extent Hudson submitted a counteroffer to Plaintiff on October 18, 2016, in a Purchase Order totalling $1,687,500.00, for manufacture of 10,000 each of a grip, slide and striker (to be released in 2,500 piece monthly quantities starting 2/1/2017) at lower prices per unit than quoted in Plaintiff's Offer; otherwise **DENY** the allegations contained in paragraph "22" of Plaintiff's Amended Complaint.

11. **ADMIT** the allegations contained in paragraph "23" of Plaintiff's Amended Complaint.

12. **ADMIT** the allegations contained in paragraph "24" of Plaintiff's Amended Complaint to the extent that the phrase "Terms & Conditions Apply" is printed on the Sales Order Acknowledgements attached as Exhibit "D" to the Amended Complaint, but **DENY** that this reference provided Defendants with notice of Plaintiff's terms and conditions; otherwise DENY the allegations contained in paragraph "24" of Plaintiff's Amended Complaint.

13. **ADMIT** that Plaintiff machined parts for Hudson and shipped parts to Hudson, DENY that parts machined or shipped by Plaintiff were done so to Hudson's specifications and instructions and **DENY** the remaining allegations contained in paragraph "25" of Plaintiff's Amended Complaint.

14. **ADMIT** the allegations contained in paragraphs "26" and "27" of Plaintiff's Amended Complaint.

15. **ADMIT** that Hudson periodically updated purchase orders to reflect material revision level but **DENY KNOWLEDGE OR INFORMATION** sufficient to form a belief as to the remaining allegations contained in paragraph "28" of Plaintiff's Amended Complaint.

16. **DENY KNOWLEDGE OR INFORMATION** sufficient to form a belief as to what was printed on the Sales Order Acknowledgements referenced by Plaintiff in paragraph "29"

of Plaintiff's Amended Complaint and **DENY** that these Acknowledgements, assuming they were received by Hudson, provided Hudson with notice of Plaintiff's terms and conditions and otherwise **DENY** the allegations contained in paragraph "22" of Plaintiff's Amended Complaint.

17. **DENY** that parts machined or shipped by Plaintiff were done so to Hudson's specifications and instructions and otherwise **DENY** the allegations contained in paragraphs "30" of Plaintiff's Amended Complaint and.

18. **ADMIT** that Hudson has not paid for some parts machined and shipped by Plaintiff but **DENY** that Hudson raised no objection to parts machined and shipped and **DENY** the remaining allegations contained in paragraph "31" of Plaintiff's Amended Complaint.

19. **DENY KNOWLEDGE OR INFORMATION** sufficient to form a belief as to what materials Plaintiff has allegedly ordered and paid for or what parts Plaintiff has allegedly machined and **DENY** the remaining allegations contained in paragraph "32" of Plaintiff's Amended Complaint.

20. **ADMIT** that Billie Hudson III and Lauren Hudson have full ownership interests in Hudson and **DENY** the remaining allegations in paragraph "33" of Plaintiff's Amended Complaint..

21. **DENY** the allegations contained in paragraphs "34" of Plaintiff's Amended Complaint.

22. **ADMIT** the allegations contained in paragraph "35" of Plaintiff's Amended Complaint to the extent that they refer to statements made by Defendants Billie Hudson III and Lauren Hudson in connection with parts machined and shipped by Plaintiff in accordance with Defendants' and instructions and **DENY** the remaining allegations in paragraph "35" of Plaintiff's Amended Complaint.

23. **DENY** the allegations contained in paragraph "36" of Plaintiff's Amended Complaint.

## AS AND FOR THE FIRST CAUSE OF ACTION

24. In response to paragraph "37" of Plaintiff's Amended Complaint, Defendants restate and incorporate by reference their answers to the allegations contained in paragraphs "1" through "36" of the Amended Complaint.

25. **ADMIT** that the parties entered a contract when Hudson made a counteroffer on November 4, 2016, which Plaintiff accepted on December 6, 2016, and **DENY** the remaining allegations in paragraph "38" of Plaintiff's Amended Complaint.

26. **ADMIT** that the contract required CVMI to machine parts per Defendant Hudson's specifications and ship them to Defendant Hudson per Defendant Hudson's instructions but **DENY** that parts machined or shipped by Plaintiff were done so to Hudson's specifications and instructions **and DENY** the remainder of the allegations contained in paragraph "39" of Plaintiff's Amended Complaint.

27. **DENY** the allegations contained in paragraphs "40" and "41" of Plaintiff's Amended Complaint.

## AS AND FOR THE SECOND CAUSE OF ACTION

28. In response to paragraph "42" of Plaintiff's Amended Complaint, Defendants restate and incorporate by reference their answers to the allegations contained in paragraphs "1" through "41" of the Amended Complaint.

29. To the extent paragraphs "43" and "44" of Plaintiff's Amended Complaint contain conclusions of law, no response is required.

30. **ADMIT** that Plaintiff shipped goods to Hudson and **ADMIT** that Hudson received goods; **DENY** that goods shipped by Plaintiff were done so to Hudson's specifications and

instructions and **DENY** the remaining allegations contained in paragraph "45" of Plaintiff's Amended Complaint.

31. **DENY** the allegations contained in paragraph "46" of Plaintiff's Amended Complaint.

## AS AND FOR THE THIRD CAUSE OF ACTION

32. In response to paragraph "47" of Plaintiff's Amended Complaint, Defendants restate and incorporate by reference their answers to the allegations contained in paragraphs "1" through "46" of the Amended Complaint.

33. To the extent paragraphs "48" and "49" of Plaintiff's Amended Complaint contain conclusions of law, no response is required.

34. **DENY** the allegations contained in paragraphs "50" through "53" of Plaintiff's Amended Complaint.

## AS AND FOR THE FOURTH CAUSE OF ACTION

35. In response to paragraph "54" of Plaintiff's Amended Complaint, Defendants restate and incorporate by reference their answers to the allegations contained in paragraphs "1" through "53" of the Amended Complaint.

36. **DENY** the allegations contained in paragraphs "55" through "57" of Plaintiff's Amended Complaint.

## AS AND FOR THE FIFTH CAUSE OF ACTION

37. In response to paragraph "58" of Plaintiff's Amended Complaint, Defendants restate and incorporate by reference their answers to the allegations contained in paragraphs "1" through "57" of the Amended Complaint.

38. **DENY** the allegations contained in paragraphs "59" through "67" of Plaintiff's Amended Complaint.

### AS AND FOR A FIRST, SEPARATE, AND COMPLETE AFFIRMATIVE DEFENSE TO THE FIRST, SECOND, THIRD, AND FOURTH CAUSES OF ACTION IN PLAINTIFF'S AMENDED COMPLAINT, DEFENDANTS FURTHER ALLEGE:

39. Plaintiff failed to perform and adhere to its obligations under the contract by neglecting to furnish conforming goods in accordance with the contract's terms, and thus Hudson's alleged required duty to perform under the contract was wholly extinguished by virtue of Plaintiff's non-performance.

### AS AND FOR A SECOND, SEPARATE, AND COMPLETE AFFIRMATIVE DEFENSE TO THE FIRST, SECOND, THIRD, AND FOURTH CAUSES OF ACTION IN PLAINTIFF'S AMENDED COMPLAINT, DEFENDANTS FURTHER ALLEGE:

40. Plaintiff has become unjustly enriched by virtue of its receipt of payment from Hudson under the contract and retention of Hudson's property notwithstanding Plaintiff's non-performance and failure to adhere to its duties under the contract.

### AS AND FOR A THIRD, SEPARATE, AND COMPLETE AFFIRMATIVE DEFENSE TO THE FIRST, SECOND, THIRD, AND FOURTH CAUSES OF ACTION IN PLAINTIFF'S AMENDED COMPLAINT, DEFENDANTS FURTHER ALLEGE:

41. Plaintiff's Amended Complaint, and each and every individual cause of action asserted in the Amended Complaint, fails to state a cause of action upon which relief may be granted.

### AS AND FOR A FOURTH, SEPARATE, AND COMPLETE AFFIRMATIVE DEFENSE TO THE FIRST, SECOND, THIRD, AND FOURTH CAUSES OF ACTION IN PLAINTIFF'S AMENDED COMPLAINT, DEFENDANTS FURTHER ALLEGE:

42. Plaintiff failed to take reasonable steps to mitigate its damages.

### AS AND FOR A FIFTH, SEPARATE, AND COMPLETE AFFIRMATIVE DEFENSE TO THE FIRST, SECOND, THIRD, AND FOURTH CAUSES OF ACTION IN PLAINTIFF'S AMENDED COMPLAINT, DEFENDANTS FURTHER ALLEGE:

43. Plaintiff's claim for unjust enrichment is categorically without merit because it is based solely on the same facts and circumstances underlying Plaintiff's first, second, and third causes of action for breach of contract and damages under the UCC, and Plaintiff alleges no independent claim for equitable relief sufficient to maintain a cause of action for unjust enrichment.

### AS AND FOR A SIXTH, SEPARATE, AND COMPLETE AFFIRMATIVE DEFENSE TO THE FIRST, SECOND, THIRD, AND FOURTH CAUSES OF ACTION IN PLAINTIFF'S AMENDED COMPLAINT, DEFENDANTS FURTHER ALLEGE:

44. Plaintiff's claim for unjust enrichment is barred by the doctrine of unclean hands.

### AS AND FOR A SEVENTH, SEPARATE, AND COMPLETE AFFIRMATIVE DEFENSE TO THE FIRST, SECOND, THIRD, AND FOURTH CAUSES OF ACTION IN PLAINTIFF'S AMENDED COMPLAINT, DEFENDANTS FURTHER ALLEGE:

45. If Plaintiff has, or will in the future, file for bankruptcy, the automatic stay provisions applicable within the United States Bankruptcy Code will stay prosecution and this Court and Plaintiff will lose jurisdiction in that the action will belong to the trustee in bankruptcy.

### AS AND FOR AN EIGHTH, SEPARATE, AND COMPLETE AFFIRMATIVE DEFENSE TO THE FIRST, SECOND, THIRD, AND FOURTH CAUSES OF ACTION IN PLAINTIFF'S AMENDED COMPLAINT, DEFENDANTS FURTHER ALLEGE:

46. Plaintiff's action is barred under the doctrine of waiver and estoppel.

### AS AND FOR A NINTH, SEPARATE, AND COMPLETE AFFIRMATIVE DEFENSE TO THE FIRST, SECOND, THIRD, AND FOURTH CAUSES OF ACTION IN PLAINTIFF'S AMENDED COMPLAINT, DEFENDANTS FURTHER ALLEGE:

47. Hudson's alleged required performance under the contract is unenforceable under the doctrine of impossibility.

### AS AND FOR A TENTH, SEPARATE, AND COMPLETE AFFIRMATIVE DEFENSE TO THE FIRST, SECOND, THIRD, AND FOURTH CAUSES OF ACTION IN PLAINTIFF'S AMENDED COMPLAINT, DEFENDANTS FURTHER ALLEGE:

48. Hudson's alleged required performance under the contract is unenforceable under the doctrine of impracticability.

### AS AND FOR AN ELEVENTH, SEPARATE, AND COMPLETE AFFIRMATIVE DEFENSE TO THE FIRST, SECOND, THIRD, AND FOURTH CAUSES OF ACTION IN PLAINTIFF'S AMENDED COMPLAINT, DEFENDANTS FURTHER ALLEGE:

49. Plaintiff's claim for piercing the corporate veil fails to state an independent cause under New York law.

### COUNTER-CLAIM

### BREACH OF CONTRACT

50. Defendants repeat and incorporate the allegations contained in paragraphs "1" through "49" as if fully set forth herein.

51. Hudson sent Plaintiff a request for quote ("RFQ2016-546") on September 21, 2016, for the manufacture of parts necessary to produce Hudson's flagship pistol, the H9, on or about September 21, 2016. A copy of RFQ2016-546 is attached as **Exhibit "1"**.

52. Specifically, RFQ2016-546 sought a bid from Plaintiff to produce a "10,000-piece spot buy" for the H9's grip and slide with 2,500 of each piece to be shipped to Hudson monthly.

53. RFQ2016-546 contained reference to Hudson's website and "terms." Ex. 1. Indeed, RFQ2016-546 stated at the bottom that Hudson's "Terms and Conditions can be referenced at hudsonmfgllc.com." Ex. 1. The "Terms and Conditions" referenced in RFQ2016-546 - http://www.hudsonmfg.com/Terms - have not changed from September 2016 to date. A copy the "Terms and Conditions" that have been available for view on Hudson's website from September 2016 to date is attached as **Exhibit "2."**

54. Hudson's Terms and Conditions contain a "Dispute Resolution" provision and state that any litigation arising out of or related to purchase of products and services will be "governed by and construed according to the laws of the state of Texas and litigated exclusively in a state or federal court located in Travis County, Texas." Ex. 2, p. 9.

55. It is apparent from the face of RFQ2016-546 that the Terms and Conditions would be incorporated into any quote solicited from any seller and Paragraph 1 of the Terms and Conditions clearly state it is intended to govern any purchase order entered into by Hudson and any seller. Exs. 1, 2. Paragraph 1 of the Terms and Conditions makes clear that delivery of a purchase order acknowledgement, commencement of work or shipment of products manifests a Seller's assent to Hudson's Terms and Conditions. Ex. 2.

56. It is also clear from Paragraph 1 of Hudson's Terms and Conditions that Hudson expressly rejected any additional or different terms proposed by any seller in any form or on any seller's website. Ex. 2. Hudson presented these Terms and Conditions to Plaintiff containing this explicit rejection of alternative terms prior to any negotiation of the contract at issue in this case. Ex. 2.

57. Plaintiff and Hudson discussed the H9 project, the expectations for the required machined parts, and Plaintiff's capability of producing these parts in the quantities and on the schedule requested by Hudson. Plaintiff represented to Hudson that it had the manufacturing capacity, capability and certification to produce the grip and slide as well as other machined parts Hudson needed for the H9 in both the quantities and time frame needed.

58. On or about October 18, 2016, Plaintiff sent Hudson "Quote Q61280" stating pricing options and discounts for quantities of 2,500 per month for the production of a grip and slide, in addition to the H9's required frame insert and recoil spring guide. Quote Q61280 contained a discounted per-unit price. While the Quote stated "All Quantities Quoted Are

Monthly," this was revised in the normal course of business and the final purchase order that was shipped against contained the stated required quantities.

59. Quote Q61280 – which tracked the language of RFQ2016-546 for the production of the various components at Hudson's specifications - stated that "CVM Terms & Conditions (D106) Apply." However, when Hudson attempted to navigate the website listed in Quote Q61280, the purported terms were "Not Found." *See* **Exhibit "3."** At no time did Plaintiff provide a copy of its alleged terms and conditions to Hudson, nor did Plaintiff's representatives discuss its terms and conditions in communications with Hudson. In fact, until receiving the Complaint in this case, no one at Hudson had never seen Plaintiff's alleged Terms and Conditions.

60. After further discussions, on November 8, 2016, Hudson sent a counter offer, Purchase Order 2016516, in which Hudson ordered Plaintiff to produce 10,000 grips, barrels and strikers for the H9 at a greater quantity and at a *lower price* than stated by Plaintiff in Quote Q61280. "**Exhibit 4.**" Purchase Order 2016516 again referred to Hudson's "Terms" available on its website, Ex. 2, and where they could be downloaded. Ex. 4. Thereafter, Plaintiff sent a Sales Order Acknowledgement accepting Hudson's counter offer, by tracking the exact language of Purchase Order 2016516.

61. Purchase Order 2016516 specifically stated "Parts to be released in 2,500-piece monthly quantities starting 2/1/2017."

62. Purchase Order 2016516 contemplated that parts would be manufactured by Plaintiff in Cambridge, New York, and shipped by Plaintiff to Hudson's facility in Temple, Texas. There was no intent by Hudson to send employees to supervise or facilitate the work of Plaintiff under the contract. Contemporaneously, Hudson sent Plaintiff Purchase Order 2016517 for custom "tooling" required by Plaintiff to produce the grips, barrels, and strikers for the H9. Defendants incurred $110,300.00 in costs by virtue of this additional Purchase Order. Defendants

also incurred $54,770.00 in costs for forging and machine tooling from Trenton Forging, a steel manufacturing company.

63. Plaintiff began shipping parts pursuant to Purchase Order 2016516 in June 2017. However, Plaintiff failed to meet timelines and was not ready for full-scale production. Due to the inability of Plaintiff to meet time and quantity requirements of the Purchase Order, and other supply chain impacts, Hudson revised its production ramp-up with all suppliers and agreed to accept 300 of each required part per week starting in October 2017. Hudson revised the production schedule in an attempt to achieve a measure of reliability in production from Plaintiff. However, Plaintiff did not consistently meet this goal. Nor did plaintiff communicate with Hudson regarding whether it would or could meet the goal on a weekly basis. Plaintiff's refusal or failure to ship parts on time as agreed resulted in the complete inability of Hudson to meet demand for its product or balance its cash flow in order to pay all suppliers on time.

64. At all relevant times, including prior to the execution of the contract, Plaintiff was fully aware of Hudson's business model, specifically, that it was a single-source supplier and any disruption of machined parts on Plaintiff's end would make production of the H9 impossible.

65. Plaintiff's continued quality and production issues caused Hudson to experience cash flow issues, inhibiting Hudson's ability to produce the H9 as required to fulfill orders and make payment to all of its suppliers. For example, throughout 2017 and 2018, in November 2017, Hudson was forced to return numerous lots or parts of lots of barrels and grips shipped by Plaintiff due to massive failures in quality production.

66. Plaintiff failed to provide information requested by Hudson whenever production issues occurred. When Hudson objected to out of spec parts and Plaintiff's missed scheduled

shipments, Plaintiff told Hudson its employees were "working on it" though no remediation or changes to quality and efficiency of production occurred.

67.     Hudson worked with Plaintiff for over a year in an attempt to correct Plaintiff's poor manufacturing processes, but ultimately refused to pay Plaintiff for defective and long-overdue parts.

68.     Plaintiff's failure to adhere to its responsibilities under the contract by neglecting to meet agreed-to production levels, shipping wholly deficient, unusable, uninspected, and potentially dangerous parts, and failing to meet agreed-to shipment deadlines, constitutes a breach of contract entitling Defendants to damages under the New York Uniform Commercial Code (UCC).

69.     Defendants are entitled to monetary relief under § 2-714 of the UCC in the form of compensatory damages flowing directly from losses inflicted by virtue of Plaintiff's breach of contract in the ordinary course of Defendants' business.

70.     Defendants are additionally entitled to monetary relief under § 2-715 of the UCC in the form of both consequential and incidental damages flowing directly from Plaintiff's breach of contract.

**WHEREFORE,** Defendants HUDSON LLC, BILLIE HUDSON III, and LAUREN HUDSON demand judgment: (a) dismissing Plaintiff's Amended Complaint in its entirety; (b) awarding Defendants judgment on their counterclaim in an amount to be determined at trial; (c) awarding Defendants the costs and disbursements of this action' and (d) such other and further relief as this Court deems just and proper.

Dated: December 17, 2018

SMITH, SOVIK, KENDRICK & SUGNET, P.C.

By: _____
Karen G. Felter, Esq.
Bar Code No.: 508182
*Attorneys for Defendants*
Office and Post Office Address
250 South Clinton Street, Suite 600
Syracuse, New York 13202
Tel: (315) 474-2900
Fax: (315) 474-6015
kfelter@smithsovik.com

TO: Adam R. Shaw, Esq.
John F. Dew, Esq.
*Attorneys for Plaintiff*
Boies Schiller Flexner, LLP
30 S. Pearl Street, 11th Floor
Albany, New York 12207

{S0909167.1}

14